**LEOPOLD & ASSOCIATES, PLLC**
**80 Business Park Drive, Suite 110**
**Armonk, New York 10504**
**(914) 219-5787**
**Attorneys for Plaintiff**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

-----------------------------------------------------------X
WILMINGTON SAVINGS FUND SOCIETY, FSB,
D/B/A CHRISTIANA TRUST, NOT IN ITS INDI-
VIDUAL CAPACITY BUT SOLELY IN ITS CA-
PACITY AS CERTIFICATE TRUSTEE FOR NRP
MORTGAGE TRUST 1, by and through its servicer
NEWREZ LLC, F/K/A NEW PENN FINANCIAL,
LLC, D/B/A SHELLPOINT MORTGAGE SERVIC-
ING,

              Plaintiff ,

                 v.

SETH LEVINE, ENGLEWOOD NORSE LLC,
GARFIELD VENTURES LLC, SUSSEX VEN-
TURES LLC, WEST ORANGE VENTURES LLC,
CLIFTON 126 CENTER LLC, NUTLEY NORSE
LLC, BAYONNE REO VENTURES LLC, BA-
YONNE VENTURES LLC, PASSAIC REO VEN-
TURES LLC, HILLSIDE REO VENTURES LLC,
GARFIELD RE VENTURES LLC, 219 HILLSIDE
VENTURES LLC, PASSAIC MAIN NORSE LLC,
ELIZABETH CATHERINE VENTURES LLC,
ELIZABETH LOUISAVENTURES LLC,
HILLSIDE NORSE LLC, PLAINFIELD PA VEN-
TURES LLC, LL REO VENTURES LLC,

              Defendants.

-----------------------------------------------------------X

Civil Action No._____

**COMPLAINT**

Plaintiff Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not in its individual capacity but solely in its capacity as Certificate Trustee for NRP Mortgage Trust 1 ("Wilmington"), by and through its servicer NewRez LLC, f/k/a New Penn Financial, LLC, d/b/a Shellpoint Mortgage Servicing ("Shellpoint") for its Complaint in the action against Seth Levine ("Levine" or "Guarantor"), Garfield Ventures LLC, Englewood Norse LLC, Nutley Norse LLC, West Orange Ventures LLC, Sussex Ventures LLC, Clifton 126 Center LLC, Bayonne REO Ventures LLC, Bayonne Ventures LLC, Passaic REO Ventures LLC, Hillside REO Ventures LLC, Garfield RE Ventures LLC, 219 Hillside Ventures LLC, Passaic Main Norse LLC, Elizabeth Catherine Ventures LLC, Elizabeth Louisa Ventures LLC, Plainfield PA Ventures LLC, Hillside Norse LLC, and LL REO Ventures LLC (together, the "LLC Defendants" or "Borrowers") respectively, which are controlled by Levine, allege as follows:

## BACKGROUND

1.     Plaintiff brings this action for legal, equitable, injunctive and declaratory relief for the appointment of a receiver with respect to eighteen multifamily residential properties located throughout New Jersey (each, a "Property" and collectively, the "Properties") as to which Plaintiff holds a senior loan interest, and which has been abandoned by Defendant Levine and the Property's respective LLC Defendant owner.  Absent immediate appointment of a receiver -- to which the Defendants consented -- the Properties will be without management and present an imminent danger to the tenants and the public.

## JURISDICTION

2.     This Court has jurisdiction over this matter, pursuant to 28 U.S.C. §1332(a)(1), because: (a) the amount in controversy exceeds $75,000, exclusive of interest and costs; and (b) there is complete diversity between Plaintiff and Defendants.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Levine and the LLC Defendants reside in this District, the Properties are in this District, and/or because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## THE PARTIES

4.      Plaintiff Wilmington is a federal savings bank and citizen of the State of Delaware.

5.      Upon information and belief, Levine is an individual residing at 636 South Forest Drive, Teaneck, New Jersey.

6.      Upon information and belief, Levine and other companies with which he is affiliated are the owners of at least 38 multifamily residential properties located within New Jersey.

7.      Upon information and belief, defendant Englewood Norse LLC ("Englewood Norse") is a New Jersey limited liability company with its principal place of business at 210 River Street, Hackensack, New Jersey.

8.      Upon information and belief, defendant Garfield Ventures LLC ("Garfield Ventures") is a New Jersey limited liability company with its principal place of business at 210 River Street, Hackensack, New Jersey.

9.      Upon information and belief, defendant Sussex Ventures LLC ("Sussex Ventures") is a New Jersey limited liability company with its principal place of business at 210 River Street, Hackensack, New Jersey.

10.      Upon information and belief, defendant West Orange Ventures LLC ("West Orange Ventures") is a New Jersey limited liability company with its principal place of business at 210 River Street, Hackensack, New Jersey.

11.     Upon information and belief, defendant Clifton 126 Center LLC ("Clifton 126 Center") is a New Jersey limited liability company with its principal place of business at 210 River Street, Hackensack, New Jersey.

12.     Upon information and belief, defendant Nutley Norse LLC ("Nutley Norse") is a New Jersey limited liability company with its principal place of business at 210 River Street, Hackensack, New Jersey.

13.     Upon information and belief, defendant Bayonne REO Ventures LLC ("Bayonne REO Ventures") is a New Jersey limited liability company with its principal place of business at 210 River Street, Hackensack, New Jersey.

14.     Upon information and belief, defendant Bayonne Ventures LLC ("Bayonne Ventures") is a New Jersey limited liability company with its principal place of business at 210 River Street, Hackensack, New Jersey.

15.     Upon information and belief, defendant Passaic REO Ventures LLC ("Passaic REO Ventures") is a New Jersey limited liability company with its principal place of business at 210 River Street, Hackensack, New Jersey.

16.     Upon information and belief, defendant Hillside REO Ventures LLC ("Hillside REO Ventures") is a New Jersey limited liability company with its principal place of business at 210 River Street, Hackensack, New Jersey.

17.     Upon information and belief, defendant Garfield Re Ventures LLC ("Garfield RE Ventures") is a New Jersey limited liability company with its principal place of business at 210 River Street, Hackensack, New Jersey.

18.     Upon information and belief, defendant 219 Hillside Ventures LLC ("219 Hillside Ventures") is a New Jersey limited liability company with its principal place of business at 210 River Street, Hackensack, New Jersey.

19.     Upon information and belief, defendant Passaic Main Norse LLC ("Passaic Main Norse") is a New Jersey limited liability company with its principal place of business at 210 River Street, Hackensack, New Jersey.

20.     Upon information and belief, defendant Elizabeth Catherine Ventures LLC ("Elizabeth Catherine Ventures") is a New Jersey limited liability company with its principal place of business at 210 River Street, Hackensack, New Jersey.

21.     Upon information and belief, defendant Elizabeth Louisa Ventures LLC ("Elizabeth Louisa Ventures") is a New Jersey limited liability company with its principal place of business at 210 River Street, Hackensack, New Jersey.

22.     Upon information and belief, defendant Hillside Norse LLC ("Hillside Norse") is a New Jersey limited liability company with its principal place of business at 210 River Street, Hackensack, New Jersey.

23.     Upon information and belief, defendant Plainfield PA Ventures LLC ("Plainfield PA Ventures") is a New Jersey limited liability company with its principal place of business at 210 River Street, Hackensack, New Jersey.

24.     Upon information and belief, defendant LL REO Ventures LLC ("LL REO Ventures") is a New Jersey limited liability company with its principal place of business at 210 River Street, Hackensack, New Jersey.

25.     Upon information and belief, none of the members of the LLC Defendants set forth in paragraphs 7 to 25 are citizens of the same state as Plaintiff.

## PLAINTIFF'S INTEREST IN THE PROPERTIES

### A.    April 17, 2019 Mortgage

26.    On or about April 17, 2019, Conventus LLC ("Conventus") made a loan to Garfield Ventures, Englewood Norse, Nutley Norse, West Orange Ventures, Sussex Ventures & Clifton 126 Center ("April 17 Mortgagors")  in the original principal amount of $6,596,474.00 (the "April 17 Loan").  To evidence its indebtedness under the April 17 Loan, the April 17 Mortgagors, jointly and severally, executed and delivered to Conventus a certain promissory note on or about April 17, 2019 (the "April 17 Note") in the original principal of $6,596,474.00.

27.    To secure payment of the April 17 Note, on or about April 17, 2019, the April 17 Mortgagors executed and delivered to Conventus a Commercial Mortgage, Assignment of Leases and Rents, Fixture Filing, and Security Agreement (the "April 17 Mortgage") Also on April 17, 2019, to induce Conventus to make the loan to April 17 Mortgagors and to further secure its repayment, Guarantor executed and delivered to Conventus a Guaranty (the "April 17 Guaranty"). the April 17 Note, April 17 Mortgage, and April 17 Guaranty are collectively referred to herein as the "April 17 Loan Documents".

28.    By assignment dated May 29, 2019, the April 17 Loan Documents were assigned to Wilmington.

### B.    May 13, 2019 Mortgage

29.     On or about May 13, 2019, Conventus made a loan to Bayonne REO Ventures, Bayonne Ventures, Passaic REO Ventures, Hillside REO Ventures, Garfield RE Ventures & 219 Hillside Ventures ("May 13 Mortgagors") in the original principal amount of $3,400,000.00 (the "May 13 Loan").  To evidence its indebtedness under the May 13 Loan, the May 13 Mortgagors, jointly and severally, executed and delivered to Conventus a certain promissory note  on or about May 13, 2019 (the "May 13 Note") in the original principal of $3,400,000.00.

30.     To secure payment of the May 13 Note, on or about May 13, 2019, the May 13 Mortgagors executed and delivered to Conventus a Commercial Mortgage, Assignment of Leases and Rents, Fixture Filing, and Security Agreement (the "May 13 Mortgage").  Also on May 13, 2019, to induce Conventus to make the loan to May 13 Mortgagors and to further secure its repayment, Guarantor executed and delivered to Conventus a Guaranty (the "May 13 Guaranty"). The May 13 Note, May 13 Mortgage, and May 13 Guaranty are collectively referred to herein as the "May 13 Loan Documents".

31.     By assignment dated May 29, 2019, the May 13 Loan Documents were assigned to Wilmington.

### C.     June 3, 2019 Mortgage

32.     On or about June 3, 2019, Conventus made a loan to Passaic Main Norse, Elizabeth Catherine Ventures, Elizabeth Louisa Ventures, Plainfield PA Ventures, Hillside Norse and LL REO Ventures ("June 3 Mortgagors") in the original principal amount of $4,150,000.00 (the "June 3 Loan").  To evidence its indebtedness under the June 3 Loan, the June 3 Mortgagors, jointly and severally, executed and delivered to Conventus a certain promissory note on or about June 3, 2019 (the "June 3  Note") in the original principal of $4,150,000.00.

33.     To secure payment of the June 3 Note, on or about June 3, 2019, the June 3 Mortgagors executed and delivered to Conventus a Commercial Mortgage, Assignment of Leases and Rents, Fixture Filing, and Security Agreement (the "June 3 Mortgage").  Also on June 3, 2019, to induce Conventus to make the loan to June 3 Mortgagors and to further secure its repayment, Guarantor executed and delivered to Conventus a Guaranty (the "June 3 Guaranty"). The June 3 Note, June 3 Mortgage, and June 3 Guaranty are collectively referred to herein as the "June 3 Loan Documents".

34.     By assignment dated June 12, 2019, the June 3 Loan Documents were assigned to Wilmington.

35.     Shellpoint acts as the servicer for NRP Mortgage Trust 1 for all of the loans at issue. As servicer, Shellpoint collects payments from borrowers and may be required to make advances for unpaid real estate taxes and other municipal obligations such as water and sewer payments, and also to ensure that the Properties are properly insured.

### THE RELEVANT PROVISIONS OF THE LOAN DOCUMENTS

**A.     The Mortgages**

36.     Each of the Mortgages contain materially identical substantive terms.

37.     Section 18 of the Uniform Covenants of each Mortgage provides that "The term Event of Default as used in this Mortgage means the occurrences or happening, at any time and from time to time," including section 18.2 "Performance of Obligation. The failure, refusal, or neglect to perform and discharge fully and timely any of the Obligations as and when required."

38.     Section 1 of the Uniform Covenants of each of the Mortgages provides that the "Borrower shall…(g) not abandon the Mortgaged Property."

39.     Section 1 of the Uniform Covenants of each of the Mortgages further provides that the "Borrower shall…(k) if the Mortgage Property is a rental property, generally operate and maintain it in such manner as to realize its maximum rental potential."

40.     Section I of the Transfer of Rights in the Property of each of the Mortgages provides that the "Borrower further irrevocably grants, transfers, and assigns to Lender the Rents" for all the properties listed in the mortgages.

41.     Section 7 of the Uniform Covenants of each of the Mortgages provides  that the "Lender grants permission to Borrower to collect and retain the Rents of the Mortgage property… however such permission to Borrower shall be automatically revoked on default by Borrower…in the performance of any of the Obligations, and Lender shall have the right to collect and receive the Rents regardless of whether declaration of default has been delivered as provided in paragraph 44 of the Mortgage and without regard to the adequacy of the security of the Indebtedness secured by this Mortgage."

42.     Section 11 of the Uniform Covenants of each Mortgage further provides that if an Event of Default has occurred and is continuing, "Lender may…do any such act in such manner and to such extent as either deems necessary to preserve or protect the Mortgaged Property…or Lender's security for the performance of Borrower's Obligations…or the rights and powers of Lender under the Loan Documents, Lender being authorized to enter on the Mortgaged Property for any such purpose."

43.     Section 43 of the Uniform Covenants of each of the Mortgages further provides that if an Event of Default has occurred, "Lender may appoint a receiver to control the Mortgaged Property within seven (7) days of any default."

44. Section 7 of the Uniform Covenants of each of the Mortgages likewise provides that Rents shall be first used to cover "costs of operations, maintenance, collection, and Attorney Fees," and under Section 43 of the Uniform Covenants that immediately upon appointment of a receiver, "Borrower agrees to cooperate with the receiver and turn over all control to said receiver and otherwise cooperate with the receiver appointed by Lender."

### B. The Guaranties

45. The Guaranties contain materially identical terms.

46. Section 1.1 of each of the Guaranties provides, in relevant part, that the Guarantor "guarantees to Lender … the full and faithful payment of all amounts owed and performance of each and every one of the obligations, responsibilities, and undertakings to be carried out, performed, or observed by Borrower under the Note, the Mortgage," and when Borrower fails to pay or perform "Guarantor shall pay such amounts or perform or cause to be performed such obligations, responsibilities, or undertakings as required under the terms and conditions of the Loan Documents."

### DEFENDANTS' DEFAULTS UNDER THE LOAN DOCUMENTS

47. Plaintiff recently learned that: (i) on or about August 16, 2019, a search warrant for offices operated by Levine and companies with which he is affiliated, including the property manager for the Properties was executed by agents of the Federal Bureau of Investigation ("FBI"); and (ii) the search warrant was connected to a federal investigation of Levine and his companies.

48. Upon information and belief, the offices that were the subject of the search warrant are located at 210 River Street, Hackensack, New Jersey ("Levine's Office"), which are also the Defendant LLCs' principal place of business.

49.     Plaintiffs have also learned that, as of approximately August 22, 2019, Levine and his affiliated companies are no longer conducting business, and the LLC Defendants have abandoned the respective mortgaged properties and their management obligations.  *See e.g.* Federal Home Loan Mortgage Corp. v. Levine, Case No. 2:19-cv-17421 (D.N.J. 2019).

50.     The actions by each Borrower in abandoning and ceasing the management of its respective Property constitutes an Event of Default under the terms of the Loan Documents.  Borrowers' actions as set forth above expose numerous parties to potential damages, losses, and harm.

51.     In addition, the Borrowers have failed to make their monthly mortgage payments when due. Failure to make the monthly mortgage payments also constitutes an Event of Default under the Loan Documents.

## COUNT I

### BREACH OF CONTRACT
### (Against Levine and the LLC Defendants)

52.     Plaintiff incorporates the allegations in paragraphs 1-51 as if fully set forth herein.

53.     The Loan Documents and the Guaranties are enforceable contracts between each LLC Defendant and/or Levine and Plaintiff.

54.     The Borrowers have failed to make their monthly mortgage payments when due and have abandoned the Properties and forsaken their obligations to manage the Properties.

55.     Defendants' abandonment of the Properties has breached Section I of the Loan Documents, which states, among other things, that the Borrower shall "(g) not abandon the Mortgaged Property," and "shall…(k) if the Mortgage Property is a rental property, generally operate and maintain it in such manner as to realize its maximum rental potential."

56.    By failing to make timely payments when due, and by abandoning the Properties and no longer engaging in management of the Properties, Defendants are in material breach of their obligations under the Loan Documents.

57.    The foregoing material breaches constitute Events of Default as defined in Paragraph 18 of the Mortgages.

58.    Pursuant to the Guaranties, Levine is liable to Plaintiff for any and all such losses or damages to Plaintiff.

59.    Accordingly, Plaintiff is entitled to the remedies available under the Loan Documents and the Guaranties, including the appointment of a rreceiver (to which Defendants have consented) and all other remedies provided for in the Loan Documents.

## COUNT II

### APPOINTMENT OF RECEIVER AND RELATED INJUNCTIVE RELIEF
### (Against the LLC Defendants)

60.    Plaintiff incorporates the allegations in paragraphs 1-59 as if more fully set forth herein.

61.    Plaintiff seeks the appointment of a receiver to perform the obligations that have been abandoned by Defendants, including, but not limited to: (i) paying all taxes related to the mortgaged properties; (ii) paying all expenses necessary to operate, manage, maintain and repair the mortgaged properties; (iii) maintaining the mortgaged properties in good repair; (iv) preventing waste or the impairment or deterioration of the mortgaged properties; and (v) maintaining the required insurance coverage in relation to the mortgaged properties and, if necessary, to make claims under those policies.

62.    Plaintiff also seeks the appointment of the receiver to receive all rents of the subject properties pending the outcome of this litigation.

63. Plaintiff also seeks related injunctive relief to enable the receiver to discharge its duties. Specifically, Plaintiff seeks an order directing Defendants to: (i) to deliver to the receiver all rents and income received as to the Properties; (ii) make available copies of all books and records necessary for the receiver to discharge its duties as to each of the Properties; and (iii) to refrain from interfering in the receiver's possession and management of each of the Properties.

64. Because there has been an Event of Default under the Mortgages, Borrowers have consented to the appointment of a receiver in accordance with Paragraph 43.

**WHEREFORE**, Plaintiff respectfully requests that the Court issue the following relief with respect to Defendants:

a) Immediately appoint a receiver to perform the functions as set forth in this Complaint with respect to the Properties, including retention of a qualified property manager;

b) Declare that the Mortgages have been breached and that all conditions requisite to Plaintiff's right to recover and receive rents and revenues from the Properties have occurred;

c) Appoint a receiver for the purpose of receiving all rents and other income of the Properties;

d) Order Defendants to: (i) deliver to the receiver all rents and income as to each of the Properties; (ii) make available copies of all books and records necessary for the receiver to discharge its duties as to each of the Properties; and (iii) refrain from interfering in the receiver's possession and management of the Properties;

e)      Declare and find that Defendants are in material breach of the Loan Docu-

ments and that such breaches constitute Events of Default under same;

f)      Issue a temporary restraining order, preliminary injunction and permanent

injunction against Defendants concerning the appointment of a receiver to

perform the functions as set forth in this Complaint and the accompanying

Proposed Form of Order to Show Cause with Temporary Restraints and

Preliminary Injunction, and to receive all rents and income with respect to

the Properties;

g)      An award of compensatory damages;

h)      An award of attorneys' fees, costs, and disbursements; and

i)      Such additional and further relief as the Court may deem just and equitable.

Dated:  September 19, 2019          **LEOPOLD & ASSOCIATES, PLLC**
        Armonk, New York

_____

Matthew Siti, Esq.
Leopold & Associates, PLLC
*Attorneys for Plaintiff*
80 Business Park Drive, Suite 110
Armonk, NY 10504
Telephone: 914-219-5787